IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

EARL HINES,                                     )         CASE NO. 1:09CV0379
                                                )
                    Petitioner,                 )
                                                )         JUDGE BOYKO
          v.                                    )
                                                )         MAGISTRATE JUDGE VECCHIARELLI
BENNIE KELLY, Warden,                           )
                                                )         **REPORT AND RECOMMENDATION**
                    Respondent.                 )

          This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).

Before the court is the petition of Earl Hines ("Hines") for a writ of habeas corpus filed

pursuant to 28 U.S.C. § 2254 on July 17, 2008.  Hines is in the custody of the Ohio

Department of Rehabilitation and Correction pursuant to journal entry of sentence in the

case of *State of Ohio vs. Hines*, Case No. CR 492855 (Cuyahoga County 2007).  For

the reasons set forth below, Hines' petition should be dismissed.

I

          The January 2007 term of the Cuyahoga County grand jury indicted  Hines on

one count of attempted murder, two counts of felonious assault, and one count of

having a weapon while under a disability.  The counts of attempted murder and

felonious assault each had one- and three-year firearm specifications, a notice of prior

conviction, and a repeat violent offender specification.  The state appellate court

reviewing Hines' conviction found the following facts to be relevant to his case:

> The charges stemmed from an incident occurring on February 22, 2007, during which Hines shot Lorenzo Douglas ("the victim") in the abdomen.  The matter proceeded to a jury trial.
>
> {¶ 3} The testimony at trial revealed that Hines and the victim were both residents at King's Path Condominiums in North Olmsted.  On the date of the incident, the victim entered the lobby, after dropping his child off at a bus stop. Hines was sitting on a couch in the lobby, and the victim called him a "snitch."  The victim then boarded an elevator with three other parents who were present.
>
> {¶ 4} Hines stood up, exchanged words with the victim, approached the elevator while reaching in his pocket, pulled out a gun, and shot the victim in the abdomen.  During the exchange, Hines told the victim he had done ten years in prison.  Profanities were also exchanged.
>
> {¶ 5} After Hines shot the victim, the other occupants of the elevator fled.  The victim fell to the elevator floor.  The victim later testified that Hines walked toward him and was pulling the trigger of the gun.  The victim stated, "I thought I was dead," but the gun kept clicking and did not go off.  He tried to exit the elevator, but Hines grabbed him.  Ultimately, the victim got off the elevator and exited the building.  Hines also exited the building and said to the victim, "I told you not to touch me," or something to that effect.  The victim denied touching Hines prior to the shooting, which testimony was corroborated by other witnesses.
>
> {¶ 6} After Hines returned to the building, another tenant overheard Hines in the hallway on his cell phone saying that he shot somebody.  EMS arrived and took the victim to the hospital, where emergency surgery was performed.  Medical testimony revealed that the victim sustained a lethal and potentially life-threatening wound.  The bullet was in the victim's abdominal wall, was not located, and was left in the victim.
>
> *2 {¶ 7} Stacey Ludlam, one of the witnesses to the shooting, testified that she observed the victim and Hines exchange words.  As the exchange was occurring, she turned her head away.  She then heard one of the other occupants of the elevator make a statement that scared her and made her look.  She saw that Hines had a silver object in his hand, and she heard a "pop."  She testified that the victim had his hands up before the gun went off.  Further, she did not see the victim touch, grab, push, or pull Hines prior to the shooting.

2

{¶ 8} Jason Brown, another witness to the shooting, testified that the victim did not put his hands on Hines.  He stated that the two were exchanging words, including profanities; that Hines had his hand in his pocket as soon as he got up off the couch; that as Hines walked into the elevator he started getting loud with the victim; and that Hines pulled out the gun and shot the victim without hesitation.  Brown also stated that when Hines exited the building, he made a comment to the victim and was still trying to pull the trigger, but the gun did not go off.

{¶ 9} Police officers recovered a spent bullet casing from the floor of the elevator.  They searched Hines' apartment and found a handgun, a holster, and two ammunition magazines with bullets in them.  They also found a single bullet on the floor that had a firing pin impression mark, signifying a misfired cartridge.  The spent casing was consistent with the recovered handgun.

{¶ 10} Hines testified that he had lived in the building for seven years, during which time he claimed he was mistreated by other residents.  He testified to an alleged prior incident in which the victim had grabbed him by the throat and pushed him aside.  Hines had called the police after a number of incidents and felt "it made people hate me enough to try to hurt me, harm me, or even kill me."  Hines claimed that he was carrying a weapon on the morning of February 22, 2007, out of fear.  Hines testified that when the victim entered the building, he was yelling "snitch" and curse words at Hines.  He stated that the victim went into the elevator, threatened him, and then grabbed him by the throat and was choking him.  Hines testified that he thought the victim was going to kill him, that Hines reached for his gun, and that the gun went off as he was trying to raise it to shoot the victim in the shoulder. Hines stated he called 911 on the victim's cell phone and gave the phone to the victim.  When the victim went out of the front door, Hines stated, "Do not put your hands on me any more."  Hines did not receive any medical attention for the alleged choking he sustained at the hands of the victim.  Following the shooting, Hines made a phone call to his mother.

{¶ 11} The jury convicted Hines on all counts.  The trial court merged the felonious assault convictions and sentenced Hines to a total term of incarceration of twenty-five years.

*State v. Hines*, 2008 WL 3870669 (Ohio App. Aug. 21, 2008)

Hines filed a timely notice of appeal in the state appellate court.  In his appellate brief, he asserted eight assignments of error:

I.    Appellant was denied a fair trial due to ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendment[s] of the United States Constitution.

    A.    Counsel erred by failing to prevent, and by eliciting, the admission of prejudicial character evidence against Appellant.

        1.    Counsel erred by introducing details of Defendant's 1979 felonious assault conviction after failing to prevent/object to its very submission to the jury.

        2.    Counsel elicited evidence of two additional prior convictions which were not alleged anywhere in the indictment, and which were entirely inadmissible.

        3.    Counsel failed to object to the prosecutor's introduction of inadmissible, reversible arrest evidence.

    B.    Counsel erred by undermining Appellant's case during closing arguments.

        1.    Counsel told the jury that the state had satisfied its burden [a]s to all offenses in the indictment.

        2.    Counsel repeatedly mentioned Appellant's guilt of having a weapon while under a disability, his being a felon, and that the jury may think he's a bald faced liar and psycho nut job.

        3.    Counsel openly disagreed with Appellant's testimony.

    C.    Counsel erred by failing to request instructions for the inferior offenses of attempted voluntary manslaughter and aggravated assault.

    D.    The cumulative effect of counsel's errors clearly deprived Appellant of the constitutional right to a fair trial.

2.    The trial court committed plain error by failing to strike testimony of appellant's inadmissible prior arrest and convictions from the record and failing to give a curative instruction to the jury.

4

3.     The state committed prosecutorial misconduct by inquiring into appellant's prior arrest.

4.     The trial court erred by submitting the repeat violent offender specification to the jury.

5.     The trial court erred by failing to give instructions on attempted voluntary manslaughter and aggravated assault.

6.     The trial court erred by failing to merge felonious assault and attempted murder for sentencing.

7.     The evidence presented by the state was insufficient to support a finding of guilty of attempted murder.

8.     Appellant's convictions for attempted murder and felonious assault were against the manifest weight of the evidence.

On September 2, 2008, the state appellate court overruled Hines' assignments of error and affirmed the judgment of the trial court.

Hines timely filed a notice of appeal to the Ohio Supreme Court.  In his memorandum in support of jurisdiction, Hines asserted eight propositions of law:

Proposition of Law No. I

A defendant has been denied his sixth amendment right to effective assistance of counsel where counsel prejudices defendant's right to a fair trial.

Proposition of Law No. II

A defendant has been denied a fair trial where the court fails to take any corrective action to prevent inadmissible and prejudicial evidence to be considered by the jury.

Proposition of Law No. III

A defendant has been denied a fair trial where the prosecuting attorney questions defendant concerning a prior arrest.

Proposition of Law No. IV

A defendant has been denied a fair trial where the court submits a repeat violent

5

offender specification to the jury.

Proposition of Law No. V

A defendant has been denied due process of law where the court fails to give instructions on inferior offenses or attempted voluntary manslaughter and aggravated assault.

Proposition of Law No. VI

A defendant has been subjected to unconstitutional multiple punishments where a court fails to merge an attempted murder and felonious assault conviction arising out of the same transaction.

Proposition of Law No. VII

A defendant has been denied due process of law when the state fails to produce sufficient evidence to prove all of the elements of the offense beyond a reasonable doubt.

Proposition of Law No. VIII

Defendant was denied due process of law when he was convicted and sentenced under an unconstitutional repeat violent offender specification

On February 4, 2009, the Ohio Supreme court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

On February 19, 2008, Hines petitioned the trial court for postconviction relief pursuant to Ohio Rev. Code § 2953.21.  Hines asserted two grounds for relief: ineffective assistance of trial counsel and insufficient evidence to support his conviction. On July 23, 2008, the trial court granted the state's motion for summary judgment on Hines' petition for post-conviction relief and dismissed the petition.  Hines did not appeal this decision.

6

Hines filed in this court a petition for a writ of habeas corpus on February 18, 2009.  Hines asserts seven grounds for relief in his petition:

A.    Ground one:  Denial of effective assistance of counsel under Sixth Amendment.

Supporting Facts:  Petitioner was represented by counsel at trial.  Counsel committed numerous errors and omissions and failed to develop any reasonable trial strategy which deprived petitioner of right to effective assistance of counsel.

B.    Ground two:  Fourteenth Amendment

Supporting Facts:  Petitioner was denied a fair trial where the trial [court] failed to take any corrective action to prevent inadmissible and prejudicial evidence to be considered by the jury at his trial.  This was compounded when the prosecuting attorney questioned petitioner concerning a prior arrest which was totally inadmissible.

C.    Ground three: Fourteenth Amendment

Supporting Facts:  Petitioner was denied a fair trial when the trial [court] submitted a repeat violent offender specification to the jury when the Ohio statute specifically requires this to be either accepted by the court or only to be submitted to a jury after a guilty verdict has been returned.

D.    Ground four: Fourteenth Amendment

Supporting Facts:  Petitioner was denied due process of law when the trial court failed to give any instructions on inferior offenses of attempted voluntary manslaughter or aggravated assault when substantial evidence was presented which authorize[d] the submission of these lesser offenses to the jury.

E.    Ground five:  Fifth and Fourteenth Amendment

Supporting Facts:  Petitioner was subjected to unconstitutional multiple punishments where the court failed to merged [sic] an attempted murder and felonious assault conviction arising out of the same transaction thus subjecting petitioner to multiple punishments for the same act.

7

F.    Ground six:   Fourteenth Amendment

Supporting Facts:  Petitioner was denied due process of law when the state failed to produce sufficient evidence to prove all of the elements of the offense beyond a reasonable doubt.

G.    Ground seven: Fourteenth Amendment

Supporting Facts:  Petitioner was denied due process of law when he was convicted and sentenced under a repeat violent offender specification when had been ruled to be unconstitutional.

Respondent filed an Answer/Return of Writ on April 20, 2009.  Doc. No. 5.  Petitioner

filed a Traverse on May 15, 2009.  Doc. No. 6.  Thus, the petition is ready for decision.

II

*A.  Jurisdiction*

The Court of Common Pleas of Cuyahoga County, Ohio sentenced Hines.  Hines

filed his writ of habeas corpus in the Northern District of Ohio and raises claims

regarding the constitutionality of his incarceration under 28 U.S.C. § 2254.

Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . . Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a ) & (d).  Cuyahoga County is within this court's geographic

jurisdiction.  This court has jurisdiction over Hines' petition.

Respondent argues, however, that Hines's third ground for relief is not

cognizable in habeas proceedings.  This is a challenge to the court's subject matter

jurisdiction over this claim.

8

Hines argues in his third ground for relief that he was denied a fair trial in accordance with due process when the trial court submitted a repeat violent offender specification to the jury.  Respondent argues that the court lacks jurisdiction to adjudicate Hines's third ground for relief because it raises no federal constitutional concerns but issues of state law only.

Federal courts generally do not grant habeas relief for alleged errors arising under state law:

> "[F]ederal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764 (1990);  see also *Pulley v. Harris*, 465 U.S. 37, 41 (1984). . . .  [I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.

*Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  However, an error of state law may serve as a basis for habeas relief when the petitioner was denied fundamental fairness in the trial process.  *Id.*; *see also* *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993).  An error of state law so severe as to deny fundamental fairness offends the due process clauses of the Fifth and Fourteenth Amendments.  *See United States v. Agurs*, 427 U.S. 97, 107 (1976); *see also* *In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process.").

Hines' arguments regarding a due process violation resulting from submission of a repeat violent offender specification to the jury are not entirely clear.  According to Hines, the trial court should have either made its own determination as to whether Hines was a repeat offender or submitted that issue to the jury after it found that Hines was guilty of the crimes to which the repeat violent offender specifications were appended.

9

Hines also argues that the Ohio statute pursuant to which Hines received an enhanced sentence based on the repeat offender specifications, Ohio Rev. Code § 2941.14(D)(1)(ii) ("§ 2941.14(D)(1)(ii)"), had been declared unconstitutional by the Ohio Supreme Court and was not in effect at the time Hines was sentenced.[1] These errors, Hines asserts, violated his right to a fair trial.

In support of his argument, Hines cites, *Fiore v. White*, 531 U.S. 225 (2001). *Fiore* involved a defendant who was convicted pursuant to a Pennsylvania statute that barred operating a hazardous waste facility without a permit. Fiore had a permit, but Pennsylvania courts found that Fiore had deviated so drastically from its terms that he came within reach of the statute. After the Pennsylvania Supreme Court determined that failure to possess a permit was an element of the offense, the United States Supreme Court struck down Fiore's conviction for failure to prove all necessary elements of the offense. The holding was not, as Hines asserts, that the misinterpretation of the statute was itself a violation of due process.

*Fiore* has no application to Hines' case. As Hines fails to cite any reasonably applicable Supreme Court holding that would support finding a due process violation on the facts of his case, the court concludes that he is, in fact, making a state law claim superficially cloaked as a violation of the federal constitution.[2] Because this court has

---

[1] Although these are two separate arguments, Hines' Traverse apparently treats them as a single argument.

[2] One could also argue that Hines' due process argument is an attempt to disguise an alleged violation of the Sixth Amendment right to an impartial jury in due process garb. As Hines did not argue a Sixth Amendment violation in the state courts, however, Hines has procedurally defaulted such a Sixth Amendment claim.

In addition, Hines' claim that § 2941.14(D) was without effect because it had been

no jurisdiction over claims that do not allege a federal constitutional violation, the court should dismiss Hines' third ground for relief for lack of subject matter jurisdiction.

B.    *Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings. 28 U.S.C. § 2254(e)(2). There is no need for an evidentiary hearing in the instant case. All of Hines's claims involve legal issues which can be independently resolved without additional factual inquiry.

C.    *Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas

---

declared unconstitutional is without merit. *See infra*, pp. 33-34, addressing the merits of Hines' seventh ground for relief.

Finally, as respondent notes, Hines procedurally defaulted any claim that the repeat violent offender specifications were improperly sent to the jury by failing to object contemporaneously to that procedure. "[I]n *Engle v. Isaac*, 456 U.S. 107, 124-29, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), the Supreme Court specifically found that default imposed for failure to object contemporaneously as required by Ohio's Rule 30 is an adequate and independent state ground to bar federal habeas review absent a showing of cause and prejudice." *Scott v. Mitchell*, 209 F.3d 854, 867 (6th Cir. 2000); *see also Osborne v. Ohio*, 495 U.S. 103, 124 (1990). Hines seems to be asserting cause and prejudice for this default in his Traverse: "Counsel did not object and allowed the unitary consideration of the entire indictment during the trial. The obvious prejudice was that petitioner's felonious assault conviction in 1979 was before the jury." Traverse at 18. This is not a proper claim of prejudice, as it describes the cause of possible prejudice and not the alleged prejudice itself. But even if Hines had properly alleged prejudice, this would have been of no avail. As is shown below, *infra* at 29-31, the evidence against Hines was overwhelming. Even if Hines' repeat violent offender specification had been kept from the jury, there is no doubt that a reasonable jury would have convicted Harris. As Hines could not have shown prejudice resulting from the alleged error of counsel, the default of his claim that the repeat violent offender specification should not have been sent to the jury would not have been excused.

corpus.  28 U.S.C. § 2254(b) and (c); Castillo v. Peoples, 489 U.S. 346, 349 (1989);

Riggins v. Macklin, 936 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief

remain available, the petitioner has not exhausted state remedies.  Rust v. Zent, 17

F.3d 155, 160 (6th Cir. 1994).

     A petitioner must fairly present any claims to the state courts in a constitutional

context properly to exhaust state remedies.  Anderson v. Harless, 489 U.S. 4 (1982);

Picard v. Connor, 404 U.S. 270 (1971); Shoultes v. Laidlaw, 886 F.2d 114, 117 (6th Cir.

1989).  "[O]nce the federal claim has been fairly presented to the state courts, the

exhaustion requirement is satisfied."  Picard, 404 U.S. at 275; see also Harris v.

Reeves, 794 F.2d 1168. 1174 (6th Cir. 1986).  The exhaustion requirement is properly

satisfied when the highest court in the state in which petitioner was convicted has been

given a full and fair opportunity to rule on all the petitioner's claims.  Manning v.

Alexander, 912 F.2d 878, 881-83 (6th Cir. 1990).

     The requirement that petitioners exhaust state remedies is a matter of comity

between the federal government and the states:

> The exhaustion doctrine is principally designed to protect the state courts' role in
> the enforcement of federal law and prevent disruption of state judicial
> proceedings. . . . Because "it would be unseemly in our dual system of
> government for a federal district court to upset a state court conviction without an
> opportunity to the state courts to correct a constitutional violation," federal courts
> apply the doctrine of comity, which "teaches that one court should defer action on
> causes properly within its jurisdiction until the courts of another sovereignty with
> concurrent powers, and already cognizant of the litigation, have had an
> opportunity to pass upon the matter."

Rose v. Lundy, 455 U.S. 509, 518 (1982) (quoting Darr v. Burford, 339 U.S. 200, 204

(1950)) (other citations omitted).  Because exhaustion is a matter of comity, a petition

containing unexhausted claims may be denied on the merits.  28 U.S.C. § 2254(b)(2).

Hines has no state remedies available for his claims.  Because no state remedies remain available to him, Hines has exhausted state remedies.

D.     *Procedural default*

Respondent argues that Hines has procedurally defaulted a portion of his first ground for relief and defaulted his second, fourth, fifth, and seventh grounds for relief in their entirety.  Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . .  not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure."  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and
> adequate state procedural rule, federal habeas review of the claims is barred
> unless the prisoner can demonstrate cause for the default and actual prejudice
> as a result of the alleged violation of federal law, or demonstrate that failure to
> consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Procedural default occurs when a petitioner fails to present fairly to the highest state court his claims in a federal constitutional context.  *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Anderson v. Harless*,  459 U.S. 4 (1982).  Moreover, a failure to present a claim to the highest court in the state deprives a federal court hearing a habeas petition of jurisdiction on that issue.  *See  McKeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).

If the state argues that a petitioner has procedurally defaulted his claims, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

13

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction.  . . . Third, the court must decide whether the state procedural forfeiture is an  "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  A default will also be excused if petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.

    *1.    Default and Hines' first ground for relief*

In his first ground for relief, Hines alleges that he was denied the effective assistance of trial counsel.  Respondent claims that Hines has procedurally defaulted three portions of the claim of ineffective assistance of trial counsel that he presented to the state appellate court:  (1) counsel was ineffective for failing to move to sever the count of having a weapon while under a disability from the other counts or for failing to stipulate as to that count; (2) counsel was ineffective for undermining Hines' case during closing remarks when he allegedly "repeatedly mentioned Appellant's guilt of having a weapon while under a disability, his being a felon, and suggested that the jury may think he's [a] 'bald face liar' and a 'psycho nut job,'"  Answer at 21; and (3) the cumulative effect of trial counsel's errors deprived Hines of his right to a fair trial.  Respondent argues that these portions of Hines' claim of ineffective assistance of trial counsel were defaulted because Hines failed to present them to the Ohio Supreme Court in his

14

memorandum in support of jurisdiction.

Hines makes two arguments in response to respondent's claims of procedural default. First, Hines argues that he presented these claims to the state appellate court and that he would have presented them to the Ohio Supreme Court had his petition to accept jurisdiction been granted. That is not the standard. For this court to have jurisdiction over a claim for relief, Hines must have fairly presented that claim to the highest court in the state. The only assured opportunity an appellant has to present a claim to the Ohio Supreme Court is in a memorandum in support of jurisdiction following an appeal to the state appellate court. Hines failed to assert these claims in his memorandum in support of jurisdiction. The Ohio Supreme Court, therefore, was never given the opportunity to decide whether to rule on these claims. That failure procedurally defaulted those claims and deprived this court of jurisdiction over them.

Second, Hines argues that he presented a claim of ineffective assistance of trial counsel to the Ohio Supreme Court and that the failure to present specific instances of counsel's ineffectiveness to that court was merely a failure to present "additional facts," not a failure to present the legal substance of his claim. He cites *Vasquez v. Hillery*, 474 U.S. 254 (1986), and *Richey v. Bradshaw*, 498 F.3d 344 (2007), in support of this argument. Both cases are distinguishable, however.

In *Vasquez*, the petitioner alleged that the states' systematic exclusion of blacks from the grand jury indicting him denied him equal protection of the laws. The district court hearing his petition granted habeas relief after directing the parties to present supplemental evidence regarding the likelihood that chance could have accounted for the exclusion of blacks from the grand jury. The Supreme Court held that the

15

introduction of such evidence in the federal district court did not fundamentally alter the nature of the claim already considered by the state courts.  In *Richey*, trial counsel selected an incompetent expert, failed to conduct a competent cross-examination of the prosecution's expert, and failed to discover and present potentially available and compelling scientific evidence that contradicted the state's case.  Richey presented each of those claims on appeal to the state courts and in his habeas petition.  As the Sixth Circuit observed:

> To be sure, Richey marshaled new facts to support his claim when he was granted the right to take discovery in the district court.  He presumably would have adduced the same facts in the state court, had that court not denied his request for an evidentiary hearing.  In any event, armed with the discovery that the district court authorized and incorporated in the record, Richey put his new facts before this Court on appeal.  The crux of his claim did not change, however. He continued to argue that his counsel was ineffective in handling the scientific evidence.

*Richey v. Bradshaw*, 498 F.3d 344, 350 (6th Cir. 2007).  In each of the above cases, the additional evidence did not require the reviewing court to conduct a new legal analysis or determine anew what constituted objectively deficient performance by trial counsel. The new evidence constituted new findings of fact to be weighed using the prior conclusions of law.

In Hines' case, however, the defaulted claims would change the nature of his claim of ineffective assistance of counsel.  His claim that trial counsel was ineffective for failing to move to sever the count of having a weapon while under a disability or for failing to stipulate as to that count would require the reviewing court to determine, among other things:  (1) what legal options were available to trial counsel for dealing with a count against his client for having a weapon while under a disability, (2) whether

16

the issue could reasonably be viewed as trial strategy, and (3) what constitutes objectively deficient performance by trial counsel in dealing with such a count.  Hines' claim that counsel was ineffective for allegedly undermining Hines' case during closing remarks would require the reviewing court to determine, in the context of trial counsel's strategy of conceding the elements of the crime and relying on self-defense, what constitutes objectively deficient performance by trial counsel in making closing remarks. In each case, the court would be required to make new conclusions of law, not merely review additional facts.  This changes the nature of the claim.  It is not sufficient to say that both are instances of "ineffective assistance of counsel" any more than it would be sufficient to say that two claims are the same because they both are instances of "violations of due process."  Due process may be violated in a multitude of ways, each legally distinct.  If a court is required to arrive at new conclusions of law, the nature of the claim has changed.

Hines' failure to assert his claim that the cumulative effect of trial counsel's errors deprived Hines of his right to a fair trial requires no detailed analysis to determine that he has defaulted that claim.  The Sixth Circuit has held that failure to raise in state courts a claim that the cumulative effect of trial counsel's alleged errors prejudiced a defendant procedurally defaults that claim in a petition for habeas relief.  *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002).  Thus, Hines has procedurally defaulted this portion of his first ground for relief.

For these reasons, those portions of Hines' first ground for relief that claim (1) counsel was ineffective for failing to move to sever the count of having a weapon while under a disability from the other counts or for failing to stipulate as to that count; (2)

17

counsel was ineffective for undermining Hines' case during closing remarks when he allegedly "repeatedly mentioned Appellant's guilt of having a weapon while under a disability, his being a felon, and suggested that the jury may think he's [a] 'bald face liar' and a 'psycho nut job'"; and (3) the cumulative effect of trial counsel's errors deprived Hines of his right to a fair trial should be dismissed as procedurally defaulted.

>    *2.      Default and Hines' second and fourth grounds for relief*

In his second ground for relief, Hines claims that he was denied a fair trial when the trial court failed to prevent and failed to correct the admission of inadmissible and prejudicial evidence, including allowing the prosecuting attorney to question Hines concerning a prior arrest.  Hines' fourth ground for relief argues that he was denied due process when the trial court failed to instruct the jury on the inferior offenses of attempted voluntary manslaughter and aggravated assault.  Respondent contends that Hines procedurally defaulted these claims by failing to object contemporaneously to these alleged errors.  Hines does not deny that trial counsel failed to object to these alleged errors.  Rather, Hines replies that the court had an independent duty to prevent the admission of inadmissible and prejudicial evidence and that ineffective assistance of trial counsel serves as cause for the failure to object to the failure to instruct on lesser offenses.

Hines argues that, despite trial counsel's failure to object to the alleged errors, the trial court had an independent duty to prevent the admission of inadmissible and prejudicial evidence at trial, despite the failure of Hines' counsel to object to such evidence.  According to Hines, the failure of the court to prevent the admission of such evidence or to cure its effect once admitted deprived Hines of a fair trial.  Hines cites

18

*Jones v. Macedonia-Northfield Banking Co.*, 132 Ohio St.341, 351 7 N.E.2d 544, 549 (1937), for the proposition that Ohio requires a court to intervene to prevent the introduction of such evidence.  He also cites *Lisenba v. California*, 314 U.S.214, 236 (1941); *Spencer v. Texas*, 385 U.S. 554, 563-64 (1967); and *Payne v. Tennessee*, 501 U.S. 808, 825 (1991), for the propositions that due process of law requires that a court adhere to its statutory procedure, that due process guarantees fundamental fairness, and that due process specifically bars the introduction of unduly prejudicial evidence that renders a trial fundamentally unfair.

The state appellate court noted the failure of Hines' counsel to object contemporaneously to the admission of the evidence at issue or to the failure to give an instruction on lesser offenses to the jury.  *Hines*, 2008 WL 3870669 at *5, *7.  The Supreme Court has ruled that failure to observe Ohio's requirement that parties to a criminal proceeding object contemporaneously to alleged error is an adequate and independent state ground upon which to foreclose federal habeas review.  *Osborne v. Ohio*, 495 U.S. 103,124 (1990); *Engle v. Isaac,* 456 U.S. 107, 124-29 (1982); *Scott v. Mitchell*, 209 F.3d 854, 867 (6th Cir. 2000).  Moreover, examining the merits of an assignment of error after citing a procedural default does not waive the default.  *See, e.g., Ewing v. McMackin*, 799 F.2d 1143, 1149 (1986).  Hines' second and fourth grounds for relief, therefore, have been defaulted pursuant to an adequate and independent state ground that was actually cited by the state courts.[3]

---

[3]  The state appellate court hearing Hines' appeal reviewed for plain error the trial court's failure to prevent the admission of evidence concerning Hines' conviction and arrest and failure to instruct the jury on the inferior offenses of voluntary manslaughter and aggravated assault.  *Hines*, 2008 WL 3870669 at *5-*6, *7.  Ohio courts invoke "[t]he plain

Hines contends that ineffective assistance of counsel should excuse his default of the claim that he was deprived of a fair trial by the court's failure to give an instruction on lesser offenses to the jury.  A claim of ineffective assistance of counsel may serve as cause to excuse a procedural default if (1) the claim of ineffective assistance of counsel was presented properly to the state courts as an independent constitutional claim; (2) counsel's performance was objectively deficient; and (3) petitioner was prejudiced by the deficient performance.  *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000); *Murray v. Carrier,* 477 U.S. 478, 488-89 (1986).  Hines properly presented this claim of ineffective assistance of trial counsel to the state courts.  However, the state appellate court reviewing his appeal concluded that the trial court did not err in failing to instruct the jury on lesser offenses because the evidence did not warrant such an instruction. *Hines*, 2008 WL 3870669 at *7.   Hines does nothing to show that the state appellate court erred in this conclusion.  Thus, trial counsel's assistance was not objectively deficient for failing to request an unwarranted jury instruction.  Hines also does nothing to demonstrate that he was prejudiced by counsel's alleged error.  As already noted, the evidence against Hines was so overwhelming that even if the failure request an

---

error rule . . . only in exceptional circumstances to avoid a miscarriage of justice." *State v. Long*, 53 Ohio St. 2d 91, 372 N.E.2d 804 (1978) (quoting United States v. Rudinsky, 439 F. 2d 1074, 1076 (6th Cir. 1971)).  Plain error is established if, absent the error, the outcome of the trial clearly would have been otherwise.  *Id.* at 808.  The appellate court found that the trial court did not err in not preventing the admission of evidence concerning Hines' conviction and that none of the alleged errors prejudiced Hines' right to a fair trial. As the evidence against Hines at trial was overwhelming, *see infra* at 26-29, the alleged errors by the state court did not prejudice Hines.  They would not be grounds for habeas relief, therefore, even if they had not been defaulted.  *See Brecht v. Abrahamson,* 507 U.S. 619 (1993).

instruction on lesser offenses had been error, Hines would be unable to show that he was prejudiced by that error.  As Hines does not show that his counsel's performance was deficient or that he was prejudiced by the alleged deficiency, Hines does not demonstrate cause and prejudice for his default.  Consequently, Hines' default of his claim that he was denied his right to a fair trial by the failure to instruct the jury on lesser offenses should not be excused.[4]

3.      *Default and Hines' fifth ground for relief*

Hines asserts in his fifth ground for relief that he was subjected to unconstitutional multiple punishments where the court failed to merge charges of attempted murder and felonious assault arising out of the same transaction. Respondent replies that Hines has defaulted this ground for relief because he failed to present the claim properly to the state courts in a federal constitutional context.

In Hines' brief to the state appellate court, Hines couched this issue purely as a violation of state law, examining whether the charges of attempted murder and felonious assault were, in his case, allied offenses of similar import.  At no time did he allege that the failure to merge these offenses was a constitutional violation, nor did he cite any federal case in supporting his claim.  In his memorandum in support of jurisdiction to the Ohio Supreme Court, Hines added the argument that failure to merge the charges subjected him to multiple punishments in violation of the Fifth Amendment.  It has long

---

[4]  Hines does not argue that his default of the claim that improperly-admitted evidence denied him a fair trial should be excused due to ineffective assistance of trial counsel.  Had he done so, however, he would not have been able to prove that the allegedly deficient performance of counsel prejudiced him, given the overwhelming evidence against him.  Thus, he would have been unable to demonstrate prejudice resulting from the alleged error, and the default would not have been excused.

been Ohio law, however, that a criminal constitutional question cannot be raised in the Ohio Supreme Court unless it is first presented in the court below.  *State v. Jester*, 32 Ohio St. 3d. 147, 154, 512 N.E. 2d 962 (1987).  The Ohio Supreme Court will generally not reach the merits of claims that were not raised in the underlying appellate proceeding.  Where the state courts are silent as to the reasons for denying a petitioner's due process claim, the Sixth Circuit applies the presumption that the state court "would not have ignored its own procedural rules and would have enforced the procedural bar." *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996).  Thus, because he did not properly present this ground for relief to the Ohio Supreme Court in a federal constitutional context, Hines' his fifth ground for relief should be dismissed as procedurally defaulted.

  C. *Default and Hines' seventh ground for relief*

  Hines argues in his seventh ground for relief that he was denied due process of law when he was convicted and sentenced pursuant to a repeat violent offender specification that had been declared unconstitutional by the Ohio Supreme Court. Respondent contends that Hines defaulted this claim because he presented it to the Ohio Supreme Court without first having presented it to the state appellate court.  Hines' does not contest that he failed to present this claim to the state appellate court, and an examination of Hines' state appellate confirms that respondent is correct.

  Under Ohio law, a criminal constitutional question cannot ordinarily be raised in the Ohio Supreme Court unless it is first presented in the court below.  *State v. Jester*, 32 Ohio St. 3d, 147, 154, 512 N.E. 2d 962 (1987).  It is unlikely that the Ohio Supreme Court would reach the merits of claims that were not raised in the underlying appellate

proceeding.  Where the state courts are silent as to the reasons for denying a petitioner's due process claim, the Sixth Circuit has applied the presumption that the state court "would not have ignored its own procedural rules and would have enforced the procedural bar."  *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996).  Thus, Hines has defaulted this claim.

Hines does not present cause and prejudice for his default, nor does he argue that enforcing the default would result in a miscarriage of justice.  The default of this claim, therefore, should not be excused.  For these reasons, Hines' seventh ground for relief should be dismissed as procedurally defaulted.[5]

III

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

_____

[5] Even if Hines' seventh ground for relief were not defaulted, he would be unable to obtain relief on that claim, as it is without merit.  On February 27, 2006, in *State v. Foster*, 109 Ohio St. 3d 1, 845 N.E.2d 470 (2006),  the Ohio Supreme Court overturned portions of Ohio's sentencing statutes as unconstitutional in light of *Blakely v. Washington*, 542 U.S. 296 (2004).  *Foster* severed the unconstitutional portions of Ohio's sentencing statutes and preserved most of the remainder of those statutes.  The *Foster* court held in part six of the syllabus, "After the severance, judicial fact-finding is not required before imposition of additional penalties for repeat-violent-offender and major-drug-offender specifications."  *Foster*, 109 Ohio St. 3d at 1, 845 N.E.2d at 475.  Thus, Hines errs in claiming that he was sentenced pursuant to a statute that had been declared unconstitutional.

Moreover, as respondent points out, the sentencing court specifically stated that it was not imposing a sentence based on Hines' repeat violent offender specifications.  *See* Journal Entry, June 15, 2007, Answer, Exh. 4.  Thus, Hines errs in claiming that the repeat violent offender specification was used to enhance his sentence.  As a result, he cannot show that he was prejudiced by the alleged error, even if the statute were unconstitutional.  For these reasons, Hines' seventh ground for relief are without merit.

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *Carey v. Musladin*, 549 U.S. ___, 127 S. Ct. 649, 653 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000).  Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *Carey*, 127 S. Ct., at 653.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.  "A state-court decision will certainly be contrary to our

24

clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases." *Id.* at 405.  A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand. *Doan v. Brigano,* 237 F.3d 722, 729-31 (6th Cir. 2001).  The court will examine Hines' remaining grounds for relief using the deferential standard applied to state court rulings on the petitioner's claims.

A.  *Ground one:  Whether Hines was denied the effective assistance of trial counsel*

Hines argues in the remainder of his first ground for relief that he was denied the effective assistance of trial counsel when counsel (1) failed to object to introduction of Hines' 1979 conviction for felonious assault to the jury and introduced details about that conviction; (2) elicited information about other convictions that could not have been admitted as evidence and failed to object to questions about a 1992 arrest; (3) conceded guilt during closing argument; and (4) failed to request an instruction for lesser-included offenses.  Respondent replies that trial counsel's performance was not entirely unreasonable given his strategy of bolstering Hines' credibility and, in any case, Hines is unable to show that he was prejudiced by counsel's alleged errors.

The standard for determining whether petitioner's counsel was ineffective is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Groseclose v. Bell*, 130 F.3d 1161, 1167 (6th Cir. 1997).  A claim of ineffective assistance of counsel has two components:

First, the defendant must show that counsel's performance was deficient. This

25

requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687; *see also Groseclose*, 130 F.3d at 1167.

The first prong of this test, the showing of deficient performance, is an objective one:  "[T]he proper standard for attorney performance is that of reasonably effective assistance. . . . When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness," as judged by "prevailing professional norms." *Strickland*, 466 U.S. 687-88; *see also Groseclose*, 130 F.3d at 1167.  Scrutiny of counsel's performance is highly deferential to avoid second-guessing an adverse decision.   *Strickland*, 466 U.S. at 689; *see also Groseclose*, 130 F.3d at 1167.  The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Groseclose*, 130 F.3d at 1167.  A court reviewing counsel's performance "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Strickland*, 466 U.S. at 690.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ."  *Id.* at 690-91 (1984); *see also Groseclose*, 130 F.3d at 1167-6.

The second prong of the test for ineffective assistance of counsel is whether the

26

error prejudiced petitioner:

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.  The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

*Strickland*, 466 U.S. at 690-91 (citations omitted); *see also Groseclose*, 130 F.3d at 1168.  Further "the burden rests on the accused to demonstrate a constitutional violation."  *United States v. Cronic*, 466 U.S. 648, 658 (1984).  Showing a constitutional violation requires showing that "counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."  *Nix v. Whiteside*, 475 U.S. 157, 175 (1986).  "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him."  *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  A reviewing court must ask itself "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Strickland*, 466 U.S. at 695; *see also Groseclose*, 130 F.3d at 1168.

> 1. *Failure to object to introduction of Hines' 1979 conviction for felonious assault to the jury and introducing details about that conviction*

At the start of Hines' testimony at trial, his trial counsel asked Hines if he had ever been convicted of a felony.  Hines replied that he had and described the circumstances surrounding two of his convictions.  Hines began describing the second conviction as follows:

27

> After that I was convicted of felonious assault.  My cousin brought an injured child to my home and asked by wife to baby-sit.  My wife is somewhat-- she is a very nice lady but mentally she is childish and because of her mental-- not right mentally, a lot of people take advantage of her.
>
> When my cousin asked her to baby-sit for her, my cousin knew that the child was injured and knew that my wife wouldn't know any better, she was just trying to pawn something off on my wife.  Okay.  When I came downstairs and the child was there in our home, I asked my wife--

Tr. at 491.  The prosecutor objected, and the parties went to sidebar.  Hines' attorney explained that because the repeat violent offender specification was based on a prior felonious assault, he wanted Hines to explain that he had pleaded guilty to the assault to protect his wife.  The court expressed serious doubts about this strategy.  The prosecutor withdrew his objection, and, when questioning resumed, Hines' attorney turned to asking Hines about the harassment he had experienced in his apartment building.  He returned to questioning Hines about the felonious assault conviction later during direct examination, and Hines testified that he pleaded guilty only to protect his wife.  Tr. at 508-09.

On cross-examination, the prosecutor asked Hines about details of the 1979 conviction.  Hines testified that he did not know how severely the child had been injured, repeated that he had pleaded guilty to protect his wife, said that he had served eight and a half years for the crime, and claimed that he had pleaded guilty because he thought he would serve only 18 months, as his attorney had told him he was eligible for shock probation.  Tr. 533-37.

Hines' 1979 conviction for felonious assault served as the basis for the repeat violent offender specification appended to the charges of attempted murder, felonious assault, and having a weapon while under a disability.  The defense stipulated to the

1979 conviction at the close of the prosecution's case.  The defense, however, attempted to mitigate the conviction.  As Hines' counsel told the judge, "When you hear felonious assault, your first thought is immediately gun, beat the crap out of somebody, something like that.  I believe Mr. Hines is going to describe a different version of events . . . ."  Tr. at 495.

The strategy adopted by Hines' counsel was questionable.  Nevertheless, the prior conviction for felonious assault was a serious problem for the defense, one which the defense felt obliged to confront.  Given the required presumption that, under the circumstances, the challenged action might be considered sound trial strategy, the court cannot clearly say that trial counsel's performance fell below an objective standard of reasonableness.

What is clear, however, is that Hines was not prejudiced by counsel's allegedly deficient performance.  Three eyewitnesses testified to the shooting:  Stacey Ludlum, Jason Brown, and the victim, Lorenzo Douglas.  All three testified that Hines shot Douglas and that Douglas did not touch Hines prior to the shooting.  Hines testified not only that Douglas grabbed him by the throat with his left hand but that he did not immediately release Hines' throat after Hines shot him in the stomach.  Indeed, Hines claimed that Douglas' grip was so strong that his throat was injured as a result, yet cross-examination revealed that he never asked for medical help for his injury.  Tr. at 541-43.  Moreover, the police found on the floor of Hines' apartment a bullet casing marked by a firing pin, indicating one or more misfires.  That corroborated the testimony of Douglas and Brown, who testified that Hines attempted unsuccessfully to fire the gun several times after shooting Douglas.  Hines did not offer any explanation for the

unsuccessful attempt to fire a second shot.  Tr. at 548-50.

Hines attempted to discredit the testimony of the witnesses against him.  In Ludlum's case, he opined that Ludlum disliked him because he had complained to the management of the apartment about a friend of Ludlum's, and this resulted in Ludlum's friend being evicted from her apartment.  Upon cross-examination, Hines conceded that this happened before Ludlum moved into the building.  Tr. at 550-52, 553-55.  Hines also claimed that Brown did not like him and harassed him because three years earlier he had told Brown to stay away from his house when Brown was pounding on Hines' door drunk.  Tr. at 514-16, 553.  Hines also attempted to discredit the testimony of Douglas.  He claimed that in 2006, one of Douglas's "lady friends" rang the buzzer on the outside of the apartment house door, and Hines did not open the door. When Douglas discovered this, he confronted Hines.  According to Hines, when he told his wife to call the police, Douglas grabbed him by the throat and called him "nigger."  Tr. at 503-04.  Finally, Hines tried to point out perceived discrepancies between the testimony of the three witnesses regarding events immediately before and immediately after the shooting.

During direct examination, Hines alleged that he was the victim of pervasive, race-based harassment at his apartment, including alleged harassment by Brown and Douglas.  This harassment including persons breaking the windows on his car at least five times, pasting beheaded pictures of black people on his car, and pounding on his door as people walked by.  Tr. at 502-05, 538-39.  According to Hines, he frequently called the police to complain about racial harassment.  The result, Hines claimed, is that he became known as a "snitch."  Tr. at 506-07.  Hines also related an incident at the

30

apartment building during which five unknown persons gradually hemmed him in until he clicked a cell phone in his pocket and they backed off, supposedly thinking it was a weapon.  Tr. at 505-06.  Hines claimed that he took this as evidence that people were serious about killing him because he was a snitch.  Tr. at 506.  According to Hines, he was the victim of a conspiracy.  Tr. at 552.

On cross-examination, Hines admitted that he never alleged to the police that he was being harassed on the basis of race.  Indeed, Hines conceded on cross-examination that he had filed only one complaint with the police, a complaint regarding an unknown person's breaking his windshield.  Tr. at 537-38.  Cross-examination also revealed that Hines had filed only one insurance claim for damage to his car.  Tr. at 538-39.

Given the direct testimonial evidence of three eyewitnesses, the circumstantial evidence of the misfired bullet, Hines' failure to explain the unsuccessful attempt to shoot Douglas for a second time, and the allegations of harassment that were undermined upon cross-examination, there is no reasonable probability that, absent counsel's alleged error in addressing the 1979 conviction, the jury would have accepted Hines' explanation of self-defense.  Hines would have been found guilty even if his counsel had not gone into the details of his 1979 conviction for felonious assault.  Consequently, because Hines cannot show that he was prejudiced by his counsel's alleged error, Hines' claim that counsel was ineffective for examining the details of his 1979 conviction does not warrant habeas relief and should be dismissed.

2.      *Eliciting information about other convictions and failure to object to questions about a 1992 arrest*

Hines also argues in his first ground for relief that counsel rendered ineffective assistance by eliciting details regarding convictions for carrying a concealed weapon and driving a stolen car and by failing to object to questions regarding a 1992 arrest.

Hines' counsel questioned Hines about his previous convictions.  In response, Hines revealed that his conviction for carrying a concealed weapon occurred when he was moving from one apartment to another.  Hines was carrying a bag of his effects, including an unloaded pistol.  According to Hines, when the police officer asked to search his bag, the officer discovered the unloaded gun.  Tr. at 490-91, 509-10.

There is no apparent no strategic reason for going into the details of this conviction.  Consequently, given the potential prejudicial effect of the conviction, counsel's performance fell below an objective standard of reasonableness in questioning Hines about this conviction.  Nevertheless, it cannot be said that eliciting details about the conviction made any difference in the outcome of the trial, given the evidence against Hines.

Hines' counsel also questioned him about other convictions, and Hines revealed that he had been convicted of driving a stolen car.  Tr. at 509.  Hines asserts, and respondent does not deny, this conviction would have been inadmissible had not Hines introduced it.  The record does not provide the date of this conviction, so it is unclear whether this conviction could have been used for impeachment purposes upon cross-examination.  But even if this conviction could not have been introduced even for impeachment purposes, there is no reasonable probability that Hines would have

32

avoided conviction.  Hines was not prejudiced by this alleged error.

Finally, in this court's view, counsel's performance fell below an objective standard of competence when he failed to object to questions about Hines' arrest without a subsequent charge in 2002.  Tr. at 557-61.  There is no apparent strategic reason for failing to object to this line of questioning.  Once again, however, Hines would have been convicted by any reasonable jury regardless of this error.

The performance of Hines' trial counsel fell below a standard of reasonably effective assistance in going into details of Hines' conviction for carrying a concealed weapon and for failing to object to questions about Hines' 1992 arrest.  Counsel's performance may have been ineffective for eliciting information about Hines' conviction for driving a stolen car.  But Hines cannot show that he was prejudiced by counsel's errors.  Consequently, Hines cannot receive habeas relief based on those errors.  Hines' claims of ineffective assistance of trial counsel based on these errors, therefore, should be dismissed as without merit.

3.      *Conceding guilt during closing argument*

During closing argument, Hines' attorney conceded that the state had proved every element of the crime of felonious assault.  The attorney continued, however, that Hines shot Douglas in self-defense.  The attorney asked, therefore, that the jury acquit Hines of felonious assault.  Respondent denies that this strategy fell below a standard of reasonably effective assistance.

At trial, Hines' attorney had to deal with the fact that two third-party witnesses and the victim would testify that Hines shot Douglas.  Under these circumstances, counsel's strategy was to concede that Hines had shot Douglas but argue that he had

33

done so in self-defense.  Because Hines was the only witness who would testify that Douglas attacked him before Hines shot Douglas, it was imperative that the defense bolster Hines' credibility.  It chose to do so by exhibiting forthrightness and conceding everything it could concede short of his assertion of self-defense.[6]  Under these circumstances, it cannot be said that trial counsel's decision to concede that the state had proved the elements of the crime of felonious assault but to assert that Hines had shot Douglas in self-defense fell below the standard of reasonably effective assistance.  Indeed, if Hines insisted on pleading that he was not guilty of felonious assault, there was little else that defense counsel could do given the evidence against Hines.

Finally, whether Hines conceded that the state had proved the elements of felonious assault or not, no reasonable jury would have come to any conclusion other than guilty given the evidence on the record.  Thus, because counsel did not render objectively deficient assistance for conceding that the state had proved the elements of felonious assault and because Hines was not prejudiced by this allegedly ineffective assistance, Hines' claim that he received ineffective assistance of counsel for this alleged error should be dismissed.

4.    *Failure to request an instruction for lesser-included offenses*

Hines also argues that he was denied the effective assistance of trial counsel when counsel failed to request an instruction for the lesser-included offenses of attempted voluntary manslaughter and aggravated assault.  Respondent denies that

---

[6]  Arguably, this is why Hines' attorney allowed Hines to testify about details of crimes which could not have been admitted at trial.  If so, this was a highly dubious strategy.

this decision fell below a standard of reasonably effective assistance.

Voluntary manslaughter differs from murder and aggravated assault differs from felonious assault in that voluntary manslaughter and aggravated assault include the use of deadly force brought on by sudden passion and rage caused by reasonably sufficient provocation.  *Cf.* Ohio Rev. Code §§ 2903.02 *with* 2903.03 and §§ 2903.11 *with* 2903.12.  Rather than argue both that Hines was defending himself against attack and that he was responding to anger provoked by Douglas' harassment and assault, Hines' counsel apparently chose to rely on self-defense alone, particularly as the jury might not have believed Hines' claims of harassment.[7]  As the state appellate court reviewing this claim noted, "[D]efense counsel reasonably could have concluded that the best strategy was to focus on only one theory:  self-defense."  *Hines*, 2008 WL 3870669 at *4.  As the decision was a reasonable strategic choice made by Hines' counsel, it cannot be said to fall below a standard of reasonably effective assistance.

Moreover, once again, Hines cannot show that he was prejudiced by this strategic decision, given the evidence against him.  Thus, because Hines can establish neither that his counsel's performance was objectively unreasonable nor that he was prejudiced by this alleged error, Hines' claim that counsel was ineffective because of his

---

[7]  Douglas admitted that he repeatedly called Hines a "snitch."  Hines testified, however, that this had not bothered him very much. Tr. at 540-41.  Thus, any claim of provocation would have had to rest upon Hines' general allegations of harassment.  The believability of those allegations was questionable after cross-examination on the subject demonstrated that even though Hines had testified that he often called the police about persons harassing him, he filed only one complaint and only one claim for insurance for damage to his car.  Therefore, there was little support for a claim of provocation,other than Douglas's supposed assault on Hines.  Deciding that self-defense alone was a better strategy under these circumstances was not unreasonable.

35

failure to request a jury instruction for lesser offenses should be dismissed.

B.      *Whether Hines was denied due process because he was convicted upon insufficient evidence*

Hines alleges in his sixth ground for relief that he was denied due process because there was insufficient evidence to allow a rational factfinder to return a verdict of guilty.  As already noted, the evidence against Hines was overwhelming.  Three witnesses testified that he shot Douglas and lied about Douglas' assaulting him, and the evidence of the misfired shell demonstrated that Hines tried to fire at least once more after shooting Douglas in the stomach.  There is simply no basis for the claim that this evidence is insufficient for a conviction for attempted murder and felonious assault.  For this reason, Hines' sixth ground for relief should be dismissed.

III

As described above, Hines's grounds for relief should be dismissed for the following reasons:

(1) ground one:  claims that counsel was ineffective for failing to move to sever or to stipulate regarding the count of having a weapon while under a disability, for undermining Hines' case in closing remarks, and for cumulative error are procedurally defaulted; claims that counsel was ineffective for failing to object to the introduction of prior convictions and arrests, for conceding guilt in closing remarks, and for failing to request an instruction on lessor offenses are without merit;

(2) ground two:  procedurally defaulted;

(3) ground three:  lack of subject matter jurisdiction;

36

(4) ground four:  procedurally defaulted;

(5) ground five:  procedurally defaulted;

(3) ground six:  without merit; and

(4) ground seven:  procedurally defaulted.

As no grounds for relief remain, Hines' petition should be dismissed.


Date:  June 29, 2009                                        /s/ Nancy A. Vecchiarelli
                                                           United States Magistrate Judge


## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**